NOT DESIGNATED FOR PUBLICATION

No. 113,369

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ENOCH CLARK , JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; ROBERT P. BURNS, judge. Opinion filed June 17, 2016. Affirmed.

*Susan E. Bandy*, legal intern, and *Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Alan T. Fogleman*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., POWELL and GARDNER, JJ.

*Per Curiam*:  Enoch Clark, Jr., appeals his conviction of one count of battery of a law enforcement officer, arguing that the district court should have dismissed the charge because his statutory speedy trial right was violated. We do not find this argument to be meritorious because a review of the record reveals that the State was not holding Clark in jail solely on the charge in this case. Accordingly, none of the statutory speedy trial provisions applied to him. Thus, we conclude that the district court did not err in failing to dismiss the case, and we affirm Clark's conviction.

1

On the night of January 13, 2013, Wyandotte County Sheriff's Deputy Bret Stevens was on duty at the Wyandotte County detention center and was assigned to B Pod where Clark was an inmate. As part of his duties, Deputy Stevens was supervising medical staff at the detention center as they delivered medications to the inmates through the slots in their cell doors. When the slot on Clark's cell door opened, Clark held out a cup of water and a "spork" (a combination spoon and fork) through the slot and the medical staff poured powdered Metamucil into the cup of water.

When Deputy Stevens went to close the slot on Clark's door, Clark refused to move his hands so that it could be closed. After listening to Clark for a few minutes, Deputy Stevens told Clark to move his hands away from the door. Clark refused and threw his cup of Metamucil at Deputy Stevens. The Metamucil hit Deputy Stevens on the right side of his head, spilling down his uniform and onto his boots. The Metamucil also got into Deputy Stevens' right eye causing a burning sensation and a temporary inability to see.

After calling his supervisor for backup, Deputy Stevens flushed his eye with water. He then changed his uniform and returned to his post. When he returned, Clark was agitated and still had not removed his hands from the slot in his cell door. According to Deputy Stevens, at that point Clark told him, "I will see you outside at the park and I will beat your ass and I will tackle you." Ultimately, Clark moved his hands in order to allow officers to close the slot in his cell door only after officers threatened to use pepper spray.

On January 18, 2013, the State charged Clark with one count of battery of a law enforcement officer. The district court held Clark's first appearance on January 22, 2013. On February 1, 2013, defense counsel filed a motion to suspend proceedings so Clark

2

could receive a mental evaluation to determine his competency to stand trial. On February 11, 2013, the district court granted the motion and ordered a competency evaluation. Clark refused to participate in his first evaluation, so on March 24, 2011, the district court entered a second order for Clark to be evaluated at the State Security Hospital at Larned for a competency examination under K.S.A. 2012 Supp. 22-3302 and to determine whether he lacked the mental state required as an element of the offense due to mental disease or defect under K.S.A. 22-3219.

Based on the results of the evaluation, the district court entered an order on March 26, 2013, finding that Clark was not competent to stand trial and committing him to the State Security Hospital for care and treatment. Subsequently, on June 11, 2013, the district court held a hearing at which it accepted the recommendation from the State Security Hospital that Clark was competent and fulfilled the criteria to stand trial. Although the date is unclear from the record, Clark was returned to the Wyandotte County jail.

At a preliminary hearing held on August 22, 2013, the district court found probable cause to bind Clark over for trial on the charge of battery on a law enforcement officer. Moreover, at the conclusion of the preliminary hearing, Clark waived formal arraignment and entered a plea of not guilty. Moreover, the district court scheduled the case for a jury trial on December 2, 3013.

On November 26, 2013, Clark filed a motion in limine asking the district court to exclude evidence or reference at trial of the fact the State was holding him in the Wyandotte County jail on "aggravated sexual battery" charges at the time he committed the alleged battery on Deputy Stevens in this case. Specifically, he argued that information pertaining to why he was incarcerated was more prejudicial than probative and, as such, would be inadmissible under K.S.A. 2012 Supp. 60-455.

3

During a status conference on January 15, 2014, the district court once again ordered Clark to be evaluated at the State Security Hospital. After this evaluation was completed, the district court entered an order on February 12, 2014, in which it found that Clark was incompetent to stand trial. Accordingly, the district court committed Clark to the State Security Hospital for evaluation and treatment not to exceed 90 days and stayed all proceedings during Clark's evaluation.

In a letter to the district court dated April 30, 2014, Dr. Thomas Kinlen of the State Security Hospital informed the district court that Clark was now competent to stand trial and that he should be returned to Wyandotte County. At a status conference on May 16, 2014, the State asked the district court to set the matter for a pretrial conference. It also represented to the district court that because Clark was in custody on more than one case, the district court was not obligated to meet the 90-day speedy trial requirement. Defense counsel did not object to the prosecutor's statement, and the district court set the case for a pretrial conference on June 6, 2014.

Although the case was scheduled for a plea hearing to be held on July 16, 2014, the parties informed the district court that Clark had decided not to accept the plea bargain offer made by the State. As such, it was agreed that the case would proceed to a bench trial on September 9, 2014. However, on August 19, 2014, Clark filed a motion asking for a continuance of the bench trial because his expert witness was unavailable to testify on the date for which it had been set. Alternatively, Clark requested that the district court bifurcate the trial, allow the State to present its evidence on the regularly scheduled trial date, and he could present his evidence at a later date.

On August 25, 2014, Clark filed a motion to dismiss this case for violation of his statutory right to a speedy trial under K.S.A. 2012 Supp. 22-3402. Although Clark conceded that the State was not holding him solely for the charges in this case, he maintained that the law required that the State bring him to trial within 90 days of the

finding that he was competent to stand trial. Finally, the district court held Clark's bench trial on September 9, 2014. At the start of the trial, the district court denied Clark's motion to continue but agreed to bifurcate the proceeding since Clark's expert witness was unavailable that day. Furthermore, the district court also denied Clark's motion to dismiss for speedy trial violation, finding that K.S.A. 2012 Supp. 22-3402(e) did not apply because the State was not holding Clark solely because of this charge.

The parties waived opening statements, and the State presented its evidence. The district court then recessed the bench trial until October 23, 2014. On that date, the defense presented the testimony of a clinical psychologist who had evaluated Clark and reviewed his medical records to determine if he suffered from a mental disease or defect so severe that it rendered him unable to form the criminal intent to commit the crime of battery on a law enforcement officer. In the psychologist's opinion, Clark did in fact suffer from a mental disease or defect in January 2013 that caused him to be unable to form the intent to commit a crime at that time. Moreover, he opined that although Clark's actions were intentional, they were based on faulty information.

As a rebuttal witness, the State called a forensic psychologist from the State Security Hospital, who testified that he diagnosed Clark with bipolar disorder. Notwithstanding, he rendered the opinion that Clark's behavior and actions on January 13, 2013, were connected. Likewise, he opined that Clark's actions were goal oriented and logical. Accordingly, it was his conclusion that Clark intended to commit the battery on Deputy Stevens and he did not lack the mental state to commit the crime on the date of this offense.

After considering the evidence, the district court determined that the State had presented sufficient evidence to prove that Clark had committed the crime of battery of a law enforcement officer beyond a reasonable doubt. Moreover, the district court indicated that it was not persuaded by the opinion testimony that Clark lacked the mental capacity

5

to commit the crime. The district court, therefore, found Clark guilty of battery of a law enforcement officer.

At a sentencing hearing held on December 12, 2014, the district court granted Clark's request for a downward durational departure because it found the degree of harm was less than typical for this type of crime and because of Clark's significant mental health issues. The district court then sentenced Clark to 72 months of imprisonment, recommending that he serve his sentence in the correctional wing at the State Security Hospital. Thereafter, Clark filed a timely notice of appeal.

ANALYSIS

On appeal, Clark contends that the district court erred in ruling that his statutory right to a speedy trial was not violated. It should be noted that Clark does not contend that his constitutional right to a speedy trial has been violated. Thus, Clark's argument presents a question of statutory interpretation which is an issue of law subject to unlimited review. See *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12 (2014); *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009).

K.S.A. 2012 Supp. 22-3402 states:

"(a) If any person charged with a crime and *held in jail solely by reason thereof* shall not be brought to trial within 90 days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant or a continuance shall be ordered by the court under subsection (e).

. . . .

"(e) For those situations not otherwise covered by subsection (a), (b) or (c), the time for trial *may be extended* for any of the following reasons:

6

(1) The defendant is incompetent to stand trial. If the defendant is subsequently found to be competent to stand trial, the trial shall be scheduled as soon as practicable and in any event within 90 days of such finding;

(2) A proceeding to determine the defendant's competency to stand trial is pending. If the defendant is subsequently found to be competent to stand trial, the trial shall be scheduled as soon as practicable and in any event within 90 days of such finding. However, if the defendant was subject to the 180-day deadline prescribed by subsection (b) and more than 90 days of the original time limitation remain, then the original time limitation remains in effect. The time that a decision is pending on competency shall never be counted against the state." (Emphasis added.)

Clark argues that only subsection (e) applies to his case because after an initial incompetence finding, the district court subsequently found him to be competent to stand trial. This argument requires us to determine how K.S.A. 2012 Supp. 22-3402 applies to his situation. The most fundamental rule when interpreting a statute is that the intent of the legislature governs if that intent can be ascertained. *State v. Williams*, 298 Kan. 1075, 1079, 319 P.3d 528 (2014).

To ascertain legislative intent, courts first look at the statutory language, giving common words their ordinary meanings. *State v. Phillips*, 299 Kan. 479, 495, 325 P.3d 1095 (2014). When a statute is plain and unambiguous, courts should not speculate about the legislative intent behind it, and courts should refrain from reading something into the statute that is not readily found in its words. *State v. Brooks*, 298 Kan. 672, 685, 317 P.3d 54 (2014). Finally, where there is no ambiguity, courts do not need to resort to statutory construction. Only if the statute's language or text is unclear or ambiguous do courts use canons of construction or legislative history to determine the legislature's intent. *Phillips*, 299 Kan. at 495.

7

It is undisputed that the State was not holding Clark solely by reason of the charges in this case, which he admits and which is evidenced by the fact that the charged conduct took place at a county detention center. "A defendant who is not being held 'solely by reason' of the pending charges is not entitled to the protections of the 90-day time limit for bringing a defendant to trial under K.S.A. 22-3402." *State v. Montes-Mata*, 292 Kan. 367, Syl. ¶ 2, 253 P.3d 354 (2011). Moreover, we find that the plain language of the statute does not require the application of subsection (e) in this case.

K.S.A. 2012 Supp. 22-3402(e) provides that the "time for trial may be extended" in certain situations. In the present case, however, Clark did not have a statutory speedy trial time to extend because the State was not holding him solely on charges in this case. See *Montes-Mata*, 292 Kan. 367, Syl. ¶ 2. Hence, Clark's statutory speedy trial right was not violated.

Finally, we do not find that K.S.A. 2012 Supp. 22-3402(g) or the Kansas Supreme Court's holding in *State v. Brownlee*, 302 Kan. 491, 354 P.3d 525 (2015), apply to the circumstances presented in this case. Here, the district court did not attribute any delay to Clark or to the State. Instead, it simply determined that there was no statutory speedy trial violation because Clark was not being held in custody solely for the charges in this case.

We, therefore, conclude that the district court appropriately determined that there was no speedy trial violation under the circumstances presented in this case.

Affirmed.