NOT DESIGNATED FOR PUBLICATION

No. 122,692

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

PIDY TIGER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed March 19, 2021. Affirmed.

*Pidy Tiger*, appellant pro se.

*Matt J. Maloney*, assistant county attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM: Pidy Tiger appeals the district court's summary dismissal of his K.S.A. 60-1507 motions as successive and untimely. Tiger claims he overcame the procedural bars that the district court invoked against his motions. But Tiger filed his motions after the deadline in which to do so and has not established manifest injustice to excuse his untimely filing. Because the district court correctly dismissed his motions as untimely, we affirm.

1

*Factual and Procedural Background*

A jury convicted Tiger of two crimes that occurred in November 2011: rape and aggravated indecent liberties with a child. The victim was his 10-year-old niece. See *State v. Tiger*, No. 110,278, 2015 WL 1513955, at *1 (Kan. App. 2015) (unpublished opinion) (*Tiger I*).

Before trial, Tiger had moved to dismiss his case, claiming a statutory speedy trial violation. He alleged that he had told his counsel, Alice Osburn, to assert his speedy trial rights and that any delays she had requested had been against his wishes and without good cause. The district court denied Tiger's speedy trial motion, finding that the State had used only 79 of the 90-day statutory time limit. *Tiger I*, 2015 WL 1513955, at *3. That calculation attributed to Tiger the time for continuances Osburn had requested.

Tiger's jury trial began the next day. There, outside the presence of the jury, Osburn told the district court that Tiger had not requested any of the continuances—they were at her request.

*Motion for New Trial*

Before sentencing, Tiger moved pro se for a new trial. His motion stated several ineffective assistance of counsel claims, including that Osburn had violated his right to a speedy trial by asking for continuances without his permission. The district court held a hearing on Tiger's motion for a new trial and Osburn admitted that Tiger had not agreed to the continuances and she had requested them without his permission. Yet she had discussed her scheduling issues with Tiger when they first met. The district court denied Tiger's new trial motion, concluding Tiger had failed to show that Osburn's performance was deficient and had failed to show that her actions prejudiced him.

The district court sentenced Tiger to a life sentence with a 25-year mandatory minimum sentence for each sentence, with the sentences to run concurrently. *Tiger I*, 2015 WL 1513955, at *6.

*Direct Appeal*

Tiger appealed, but we affirmed Tiger's convictions. *Tiger I*, 2015 WL 1513955, at *17. Tiger did not argue that the district court had erred in denying his speedy trial motion, so we did not review that issue. 2015 WL 1513955, at *6. We noted that this claim would not have succeeded because Tiger had outstanding warrants in another jurisdiction while he was being held on the present charges, and the statutory right to a speedy trial does not apply unless a person is "charged with a crime and held in jail solely" on that charge. *Tiger I*, 2015 WL 1513955, at *7 (citing K.S.A. 2013 Supp. 22-3402(a), and *State v. Montes-Mata*, 292 Kan. 367, Syl. ¶ 3, 253 P.3d 354 [2011]).

We did review Tiger's claim that Osburn was ineffective for having requested continuances without his permission. We affirmed the district court's ruling that Tiger had failed to meet either prong (deficient performance and prejudice) of the *Strickland* test. *Tiger I*, 2015 WL 1513955, at *9 (citing *Strickland v. Washington*, 466 U.S. 668, 697, 104 S. Ct. 2052, 80 L.Ed.2d 674 [1984]). Tiger thus failed to show ineffective assistance of counsel.

*Collateral Attacks*

After the panel denied Tiger's direct appeal, Tiger filed his first K.S.A. 60-1507 motion, which included claims for ineffective assistance of appellate counsel. One claim alleged Tiger's direct-appeal counsel was ineffective for failing to challenge the denial of his speedy trial motion. The district court denied that motion and on appeal we affirmed, finding no merit in Tiger's argument that his direct-appeal counsel was ineffective. *Tiger*

3

*v. State*, No. 117,448, 2018 WL 4376775, at *4 (Kan. App. 2018) (unpublished opinion) (*Tiger III*).

In February 2016, Tiger moved for a new trial alleging newly discovered evidence. He claimed that four notes handwritten by his niece and three family members were newly discovered evidence. The district court reviewed the notes and denied Tiger's motion, holding that they were not newly discovered evidence and would not have changed his decision. Tiger appealed that decision. We affirmed, noting the district court engaged in "a close reading of the notes and a painstaking comparison of their content with the trial record." *State v. Tiger*, No. 116,852, 2018 WL 671374, at *1 (Kan. App. 2018) (unpublished opinion) (*Tiger II*).

Tiger later filed a second K.S.A. 60-1507 motion alleging that his first K.S.A. 60-1507 counsel was ineffective. The district court denied this motion. Tiger again appealed, but his appeal was dismissed for failure to docket.

In April 2018, Tiger pro se filed his third K.S.A. 60-1507 motion. Recognizing that the court could view his motion as successive, Tiger argued that the Supreme Court's decisions in *State v. Wright*, 305 Kan. 1176, 1178, 390 P.3d 899 (2017) (constitutional right to be present at continuance hearing), and *State v. Sherman*, 305 Kan. 88, 107-109, 378 P.3d 1060 (2016) (new rubric for prosecutorial error and misconduct), changed the law, creating the exceptional circumstances necessary to overcome the bar on successive motions.

The third K.S.A. 60-1507 motion raised two substantive claims. First, Tiger claimed his absence from continuance hearings violated his constitutional rights. He argued that Osburn's continuances should not have counted against him so the district court should have dismissed his case. Second, Tiger argued prosecutorial error.

4

Counsel Michael Whalen filed a supporting memorandum for Tiger's third K.S.A. 60-1507 motion, addressing *Wright*'s retroactivity. Whalen argued *Wright* stemmed from *State v. Brownlee*, 302 Kan. 491, 509-11, 354 P.3d 525 (2015), and *State v. Dupree*, 304 Kan. 43, 50-57, 371 P.3d 862 (2016). In those cases, our Supreme Court held that the 2012 amendments to the speedy trial statute—specifically those in K.S.A. 2012 Supp. 22-3402(g)—applied retroactively. Whalen concluded *Wright* should be applied to Tiger's case. Whalen requested an evidentiary hearing to determine whether the State could have successfully brought Tiger to trial within the speedy trial time limitations.

Having reviewed Whalen's brief, the district court denied Tiger's third K.S.A. 60-1507 motion. Citing *Whisler v. State*, 272 Kan. 864, 876, 36 P.3d 290 (2001), and *Kirtdoll v. State*, 306 Kan. 335, 339-341, 393 P.3d 1053 (2017), the district court held that *Wright* did not present a watershed rule of criminal procedure so it would not apply *Wright* retroactively on collateral review. The district court also denied Tiger's prosecutorial error argument because a K.S.A. 60-1507 motion without a showing of exceptional circumstances is an improper vehicle for a prosecutorial error claim. Thus, it denied Tiger's third 60-1507 motion as untimely and successive. Tiger moved the court to reconsider that denial.

By a separate K.S.A. 60-1507 motion, Tiger claimed that his appellate counsel for his second K.S.A. 60-1507 motion was ineffective for having failed to docket his appeal. But the district court denied that motion.

In November 2019, Tiger filed yet another pro se K.S.A. 60-1507 motion. This motion argued that the State failed to disclose favorable evidence, the police lacked probable cause for his arrest, and the district court denied his constitutional right to be present at continuance hearings. Tiger conceded that his motion was successive but asserted that the district court could still consider his claims because of an intervening change in the law—*State v. Auman*, 57 Kan. App. 2d 439, 455 P.3d 805 (2019)—and

5

because he claimed actual innocence. Whalen withdrew his representation seven days later.

Tiger then filed a pro se "Motion to Reverse Pursuant to K.S.A. 60-1507," which reiterated arguments from Tiger's third K.S.A. 60-1507 motion. Tiger also argued that his direct-appeal counsel was ineffective for not having argued that trial counsel had been ineffective by falsely informing him about his speedy trial time.

In February 2020, the district court denied all of Tiger's outstanding motions. It held that Tiger's new K.S.A. 60-1507 motions failed to present substantial questions of law or fact, were untimely and successive, and were barred by res judicata. As to Tiger's motion to reconsider, the district court found it offered no basis for the district court to change its ruling and failed to present a substantial question of law or fact.

Tiger timely appeals.

*Analysis*

Tiger raises several issues on appeal. We focus on his attempts to overcome the substantial procedural hurdles inherent in his successive and untimely motions. To show the district court's error in holding his K.S.A. 60-1507 motions as untimely, Tiger argues he established manifest injustice, as is necessary to overcome the bar of untimeliness, because the district court violated his fundamental right to be present, as held in *Wright*, and he claimed actual innocence. Tiger also claims his motions showed two exceptional circumstances overcoming the procedural bar for successive 60-1507 motions: (1) *Wright* was a change in the law applicable to his case and (2) his appellate counsel was ineffective for failing to raise his constitutional right to be present at a continuance hearing.

6

When the district court summarily dismisses a K.S.A. 60-1507 motion, an appellate court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to relief. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018). Here, the district court summarily dismissed Tiger's motions without holding an evidentiary hearing. Because the files and record conclusively show that Tiger's motions were untimely, the district court properly denied Tiger an evidentiary hearing and dismissed his motions. See K.S.A. 2020 Supp. 60-1507(f); Supreme Court Rule 183(f) and (j) (2020 Kan. S. Ct. R. 223).

*Tiger fails to establish manifest injustice.*

We begin by addressing Tiger's argument that the district court erred in finding his motions untimely.

A defendant has one year from the date a conviction becomes final to file a motion under K.S.A. 2020 Supp. 60-1507(a). K.S.A. 2020 Supp. 60-1507(f)(1). The district court may extend that one-year time limitation only to prevent a manifest injustice. K.S.A. 2020 Supp. 60-1507(f)(2). This statute procedurally bars a defendant's 60-1507 motion filed outside the one-year time limitation if it fails to affirmatively assert manifest injustice. *State v. Trotter*, 296 Kan. 898, 904-05, 295 P.3d 1039 (2013).

Tiger tacitly concedes that he filed the K.S.A. 60-1507 motions he is appealing more than one year after 2015—the date his conviction became final—so they are untimely. Unless Tiger meets the manifest injustice exception, he cannot pursue a claim under this statute.

> "'The [K.S.A. 60-1507(f)] time limitation herein "may be extended by the court *only to prevent a manifest injustice*."'"
>
> . . . .

"[M]anifest injustice in the habeas context means 'obviously unfair' or 'shocking to the conscience.'" *Vontress v. State*, 299 Kan. 607, 610, 614, 325 P.3d 1114 (2014), *superseded by statute as stated in White v. State*, 308 Kan. 491, 421 P.3d 718 (2018).

Since 2016, our statute has limited the court's inquiry to determine manifest injustice to two factors:

"For purposes of finding manifest injustice under this section, the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence. As used herein, the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2020 Supp. 60-1507(f)(2)(A).

Read liberally, Tiger's brief argues that both of these factors apply.

*Tiger fails to support his claim of actual innocence.*

Tiger asserts the actual innocence exception applies, but he fails to sufficiently argue this point in his brief. He states only that the files and records from the victim, the victim's mother, and an eyewitness presented in prior post-conviction hearings all suggest that he is innocent and that he could substantiate this claim with testimony from the victim and complaining witnesses. But a panel of this court on direct appeal reviewed all the testimony and rejected Tiger's claim of insufficient evidence, see *Tiger I*, 2015 WL 1513955, at *1. And Tiger fails to point to any testimony or evidence admitted or proffered at trial or at any postconviction hearing that supports his claim of innocence. Tiger's conclusory assertions fail to show "it is more likely than not that no reasonable juror would have convicted [him] in light of [the] new evidence." K.S.A. 2020 Supp. 60-1507(f)(2)(A). Thus the district court did not err by holding Tiger failed to show actual innocence as would overcome the bar on untimely motions.

*Tiger fails to show* Wright *precluded his timely filing.*

Determining whether the remaining exception to the bar of untimeliness applies is a more complex question. Tiger asserts that *Wright* is the reason for his delay in timely filing his 60-1507 motion. In the district court, Whalen argued Tiger was unable to previously file a motion asserting his constitutional right to be present at a continuance hearing because our Supreme Court had not yet decided *Wright*. So Tiger did not raise this issue earlier because the law supporting it did not exist. Although Tiger's pro se argument on appeal is imprecise, he seems to adopt Whalen's position.

The timeliness of Tiger's K.S.A. 60-1507 motion thus hinges on whether the recent Kansas Supreme Court case of *Wright* changed the law and applies retroactively to his case. If it does, then his motion would not be subject to dismissal as untimely because it could be considered manifest injustice or patently unfair to deny Tiger's claim when the law has changed and is to be applied retroactively. K.S.A. 2020 Supp. 60-1507(f)(2); *Ludlow v. State*, 37 Kan. App. 2d 676, 686, 157 P.3d 631 (2007). So we first examine *Wright.*

*Wright* determined that the proper analysis for the violation of a defendant's statutory right to be present at a continuance hearing is the constitutional harmless error standard. 305 Kan. at 1179. Although *Wright* does not explicitly lay out its argument, it can easily be inferred. Both K.S.A. 2020 Supp. 22-3405 and the United States Constitution, through the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment, require the defendant's presence at every critical stage of the trial. *Brownlee*, 302 Kan. at 507. The Constitution's protection is the applicable kernel for *Wright*'s analysis. In *Wright*, our Supreme Court recognized that it had determined in *Dupree*, 304 Kan. at 43, Syl. ¶ 2, that a continuance hearing is a critical stage of trial. *Wright*, 305 Kan. at 1178. It is a critical stage because a defendant must get the chance to express disagreement with a continuance that could affect his right to a speedy trial under

9

K.S.A. 2020 Supp. 22-3402. *Wright*, 305 Kan. at 1178. That is, K.S.A. 2020 Supp. 22-3402 makes the defendant's presence at a continuance hearing critical because otherwise he or she would be unable to enforce the statutory speedy trial time. *Wright* infers that this situation compels constitutional protection.

*Wright* decided what to do on appeal when the district court has violated a defendant's right to be present at a continuance hearing. It recognized that our speedy trial statute (K.S.A. 2020 Supp. 22-3402) does not grant a remedy. *Wright*, 305 Kan. at 1178 (citing *Brownlee*, 302 Kan. at 511). Our speedy trial statute provides:

"If a defendant, or defendant's attorney in consultation with the defendant, requests a delay and such delay is granted, the delay shall be charged to the defendant regardless of the reasons for making the request, unless there is prosecutorial misconduct related to such delay. If a delay is initially attributed to the defendant, but is subsequently charged to the state for any reason, such delay shall not be considered against the state under subsections (a), (b) or (c) and shall not be used as a ground for dismissing a case or for reversing a conviction unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay." K.S.A. 2020 Supp. 22-3402(g).

So if a defendant is denied this right to be present and object at a continuance hearing and the continuance is granted, this violation "shall not be used as a ground for dismissing a case or for reversing a conviction." K.S.A. 2020 Supp. 22-3402(g); *Brownlee*, 302 Kan. at 511. That is, unless a defendant can show his constitutional right to a speedy trial is violated—a different analysis than K.S.A. 2020 Supp. 22-3402—or prosecutorial misconduct, the statute affords him no remedy when he is excluded from a continuance hearing. This statutory rule applies retroactively and to appellate courts. See *Brownlee*, 302 Kan. at 509-10; *Wright*, 305 Kan. at 1178.

Yet, *Wright* determined, because a continuance hearing is a critical stage that implicates the constitutional right to be present, that a constitutional remedy is appropriate if the district court violates this right. The proper analysis is to use the constitutional harmless error standard which asks whether there is a reasonable possibility that the error contributed to the verdict. 305 Kan. at 1179. See *State v. Phillips*, No. 115,326, 2017 WL 4216234, at *3-4 (Kan. App. 2017) (unpublished opinion); *State v. Andrews*, No. 113,971, 2020 WL 1070355, at *14-19 (Kan. App. 2020) (unpublished opinion) (applying *Wright* on direct appeals). Thus, the alleged "change in the law" in *Wright* is only the recognition that the proper remedy for a violation of a defendant's right to be present at continuance hearing, as recognized in *Dupree*, is the constitutional harmless error standard.

We next determine whether the rule announced in *Wright* applies retroactively to cases such as Tiger's that are already final and are before the court on collateral review. The general rule is that "new law will not be applied to cases on collateral attack." *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 8, 136 P.3d 390 (2006).

Our Supreme Court has outlined a three-step analysis to determine whether a change in law should be applied retroactively in a criminal case under collateral attack: "(1) Whether the issue is properly raised in the collateral attack; (2) whether the case was final when the new law was established; and (3) if a case was final, if an exception to the general rule against retroactive application applies." *Kirtdoll*, 306 Kan. at 339. Tiger has satisfied step one—he raised this issue in the district court, and it relates to the constitutionality of the trial proceedings. He also satisfies the second step because our Supreme Court decided *Wright* after Tiger's direct appeal was final. See *Kirtdoll*, 306 Kan. at 340.

We turn to the third step—whether an exception to the general rule against retroactive application applies. The general rule is that decisional law established after a

case is final will not apply to that case on collateral attack. 306 Kan. at 340. The recognized exceptions are "(1) if the new rule places certain kinds of primary, private individual conduct beyond the reach of the lawmaking authorities to prosecute; or (2) if the new rule is a 'watershed rule,' the observance of which involves procedures implicit in the concept of ordered liberty." 306 Kan. at 340. The first exception relates to substantive changes in the law and does not apply here.

Thus Tiger must meet the second exception, by showing that *Wright* is a watershed rule. Typically, new procedural rules do not apply retroactively. *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004). The United States Supreme Court has explained that the class of watershed rules of criminal procedure is "extremely narrow":

> "New rules of procedure, on the other hand, generally do not apply retroactively. They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise. Because of this more speculative connection to innocence, we give retroactive effect to only a small set of '"watershed rules of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.' That a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one 'without which the likelihood of an accurate conviction is seriously diminished.' This class of rules is extremely narrow, and 'it is unlikely that any . . . "ha[s] yet to emerge."' [Citations omitted.]" 542 U.S. at 352.

See *Kirtdoll*, 306 Kan. at 340.

As stated in the Court's final sentence above, this is a tremendously high bar. Our Supreme Court has not found cases even as consequential as *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (testimonial out-of-court statements by witnesses are barred under the Confrontation Clause unless witnesses are

12

unavailable and the defendant had prior opportunity to cross-examine them) and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (other than fact of prior conviction, any fact that increases penalty for crime beyond prescribed statutory maximum must be submitted to jury and proved beyond reasonable doubt) to be watershed rulings. *Bruce*, 281 Kan. 1077-78; *Whisler*, 272 Kan. at, 879.

Tiger fails to explain how *Wright* implicates fundamental fairness and the accuracy of a criminal proceeding. And he fails to explain why *Wright*'s rule falls in this extremely narrow class when cases such as *Apprendi* do not. On this alone, we could decline to address this issue. See *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019) (failure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue).

We conclude that *Wright* is not a watershed ruling. The constitutional right to a speedy trial is distinct from the constitutional right to be present at a continuance hearing. See *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State v. Mann*, 274 Kan. 670, 700-01, 56 P.3d 212 (2002) (explaining constitutional right to a speedy trial). Neither *Wright* nor *Dupree* turned on a defendant's constitutional right to a speedy trial.

Neither *Dupree* nor *Wright* is a watershed ruling, as viewed through the lens of precedent. See *Kirtdoll*, 306 Kan. at 340. The new rule must be one without which the likelihood of an accurate conviction is seriously diminished and one that alters our understand of the bedrock procedural elements essential to the fairness of a proceeding. See *Teague v. Lane*, 489 U.S. 288, 311, 313 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989). *Wright* and *Dupree* did not overhaul our understanding of due process. Nor did they alter our understanding of the importance of a defendant's right to be present, let alone any bedrock procedural element that ensures the concept of ordered liberty.

13

Because *Wright* does not apply retroactively to cases on collateral review, it cannot help Tiger overcome the bar of untimeliness. The district court was correct in holding so. See *Verge v. State*, 50 Kan. App. 2d 591, 593, 335 P.3d 679 (2014).

We find it unnecessary to address whether the district court also properly dismissed Tiger's motions as successive.

Affirmed.